UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WILLIAM ANTHONY RYAN III,

        Petitioner,

                                     CASE NO. 05-CV-72481-DT

v.

                                     JUDGE GEORGE CARAM STEEH
                                     MAGISTRATE JUDGE PAUL J. KOMIVES

MILLICENT WARREN [1],

        Respondent.

_____/


**REPORT AND RECOMMENDATION**

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . 6
     C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
           1. *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
           2. *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
           3. *Cause and Prejudice Exception* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
           4. *Fundamental Miscarriage of Justice Exception* . . . . . . . . . . . . . . . . . . . . . 16
           5. *Conclusion*
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
     D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
     E.    *Analysis of Remaining Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
     F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
III.  NOTICE TO PARTIES REGARDING OBJECTIONS
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

_____

    [1]By order entered this day, Millicent Warren has been substituted for Kenneth McKee as the proper Respondent.

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner William Anthony Ryan III  is a state prisoner who is currently confined at the Thumb Correctional Facility in Lapeer, Michigan.

2.      On January 26, 2000, Petitioner was convicted of possession of a firearm during the commission of a felony (felony-firearm),  MICH. COMP. LAWS § 750.227b, discharge of a firearm into a building,  MICH. COMP. LAWS § 750.234b(1), felon in possession of a firearm,  MICH. COMP. LAWS § 750.224f, and carrying a weapon with unlawful intent,  MICH. COMP. LAWS § 750.226, following a jury trial in the Genesee County Circuit Court.  The jury acquitted defendant of a charge of assault with intent to murder,  MICH. COMP. LAWS § 750.83.  On February 17, 2000, he was sentenced as a fourth habitual offender to serve the mandatory two-year sentence for felony-firearm, 8 to 15 years for the discharge of a weapon into a building, and 15 to 30 years  for both the felon in possession conviction and for the carrying a weapon with unlawful intent convictions.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.      DEFENDANT WAS DENIED A FAIR TRIAL WHERE THE PROSECUTOR ARGUED TO THE JURY THEY COULD CONSIDER DEFENDANT'S PRIOR FELONY CONVICTION AS SUBSTANTIVE EVIDENCE, RELEVANT TO HIS PROPENSITY TO COMMIT CRIMES, CONTRARY TO ITS LIMITED ADMISSIBILITY UNDER MRE 609 AS RELEVANT ONLY TO HIS TESTIMONIAL CREDIBILITY.
>
> II.     THE TRIAL COURT REVERSIBLY ERRED IN OVERRULING A DEFENSE OBJECTION TO THE PROSECUTOR'S QUESTION TO DEFENSE WITNESS KAPRICE BROWN AS TO WHETHER

2

> DEFENDANT HAD BEEN ARMED DURING A COMPLETELY UNRELATED INCIDENT, AS THAT EVIDENCE WAS IRRELEVANT, PREJUDICIAL, AND THE PROSECUTOR LATER MISSTATED THE EVIDENCE DURING HIS JURY ARGUMENT.
>
> III.   DEFENDANT WAS ENTITLED TO BE RESENTENCED WHERE THE TRIAL COURT BASED HIS SENTENCES IN PART ON AN EXPRESS STATEMENT THAT HE BELIEVED DEFENDANT GUILTY OF THE ASSAULT WITH INTENT TO MURDER CHARGE ON WHICH HE WAS ACQUITTED BY THE JURY.

The Court of Appeals found no merit to petitioner's claims, and affirmed his convictions and sentences. See People v. Ryan, No. 225808, 2002 WL 206505 (Mich. Ct. App. January 25, 2002) (per curiam).

4.   Petitioner, through counsel, sought leave to appeal these same issues to the Michigan Supreme Court. On August 29, 2003, the Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Ryan*, 469 Mich. 874, 668 N.W.2d 908 (2003).

5.   On March 12, 2004, petitioner, proceeding *pro se*, filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

> I.    THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO OBJECT TO THE IMPROPER COMMENTS MADE BY THE PROSECUTOR DURING REBUTTAL; FAILED TO REQUEST A CAUTIONARY INSTRUCTION BE GIVEN; AND FAILED TO MOVE FOR MISTRIAL.
>
> II.   THE CUMULATIVE EFFECT OF THE ERRORS HELD ON APPEAL, AND THE ERRORS COMMITTED BY TRIAL COUNSEL, HAD SUBSTANTIAL AND INJURIOUS EFFECT AND DENIED THE DEFENDANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND IMPARTIAL JURY. U.S. CONST., AMENDS.6, 14.

Petitioner's motion for the appointment of counsel was granted on March 16, 2004. On July 12,

3

2004, the trial court denied petitioner's motion for relief from judgment. *People v. Ryan*, No. 99-5133-FC (Genesee County, Mich., Cir. Ct., July 12, 2004).  The Michigan Court of Appeals denied petitioner's application for leave to appeal the denial of the motion for relief from judgment. *People v.* Ryan, No. 257182 (Mich. Ct. App. January 3, 2005).  On May 31, 2005, the Michigan Supreme Court denied petitioner's *pro per* application for leave to appeal.  *People* v. *Ryan*, 472 Mich.921, 696 N.W.2d 720 (2005).  The denials were by standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

6.       Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on June 22, 2005.  As grounds for the writ of habeas corpus, he raises three grounds, with considerable overlap.  In the first issue, petitioner claims that he was denied his due process rights to a fair trial and an impartial jury because of prosecutorial misconduct; that his trial attorney was ineffective for failing to object, request a cautionary instruction or move for a mistrial as to two of the instances of prosecutorial misconduct; that his appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel and cumulative error on direct appeal; and that for those reasons the trial court abused its discretion in denying the motion for relief from judgment.  The second and third grounds are stated as follows:

II.      PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS RIGHT TO A FAIR TRIAL WHERE TRIAL COUNSEL FAILED TO OBJECT TO IMPROPER COMMENTS MADE BY THE PROSECUTOR DURING TRIAL REBUTTAL.

III.     THE CUMULATIVE ERRORS HELD ON APPEAL AND ERROR COMMITTED BY TRIAL COUNSEL HAD SUBSTANTIAL AND INJURIOUS EFFECTS AND DENIED PETITIONER'S CONSTITUTIONAL RIGHT TO A FAIR AND IMPARTIAL JURY. U.S. CONST. AMENDS. 6, 14.

7.     Respondent filed his answer on January 20, 2006.  He contends that petitioner's claims are procedurally barred.

B.     *Factual Background Underlying Petitioner's Conviction*

The charges arose out of allegations by the complainant, Larry Cade, that on December 22, 1998, a man he identified as petitioner fired several shots into his house, one of which hit him in the neck and caused a serious injury.  The defense theory was alibi and mistaken identification.

Cade testified that at around 12:00 a.m. he responded to knocking on his front door.  He called out and someone responded with the name "Corkie," the only name he knew for petitioner.  This person asked what "did he have up for the night" (Trial Transcript, Vol. II, p. 99).  Cade replied that he was going to bed.  He then heard the door being kicked.  Cade looked out the front window of the house (there was no window in the steel security door) and on his porch saw a man he identified as petitioner holding a handgun.  There were two other men with him.  The man with the gun fired a shot through the window.  When Cade started running up the stairs, he heard more gunshots and was hit by a bullet in the side of his neck.  When he looked out his bedroom window he saw three men running from the front of the house.

Cade was not sure but believed that Branden Symonds was one of the other two men on the porch.  Cade acknowledged that there was limited lighting on the porch and that he did not get a really good look at either of the two men accompanying the gunman.  He knew both petitioner and Symonds from having gone to school with them.  Cade was twenty years old at the time of trial.  He thought he had last seen petitioner about a month earlier.  Symonds had been to his house earlier on the night of the  shooting but he could not recall if petitioner was with him.

Cade next saw petitioner in a local store in May of 1999, some five months after the shooting.

5

Another man was with petitioner.  Fearing they might be armed, Cade shook petitioner's hand.  He denied telling petitioner that he had been mistaken in identifying him as his assailant.

Cade did not know of any reason why petitioner would shoot him, characterizing their relationship up to that night as "all right." (Trial Transcript, Vol. II, p. 99).   He did have an altercation with Symonds but that was when they were in school together.

Angela Williams, who lived with Cade, testified that she heard  knocking, a man's voice saying the name "Corkie" and asking if Cade had any money, then kicking at the door and gunshots.  She also testified that Symonds was at the house earlier that evening but that petitioner was not.

Cade and Williams went directly to his aunt's house after the shooting.   From there, the police were contacted.  The aunt testified that Cade told her that a man named Corkie tried to rob him and shot him.

Responding police officers testified that Cade reported that he had been shot by Corkie and that  Symonds had been one of the two other men.  Cade  did not mention any shots being fired through the window.  The evidence technician found a number of spent shell casings on the front porch, observed bullet holes in the front door, but did not recall seeing any bullet holes in any windows.

Petitioner testified that his nickname is Corkie and that he and Cade had gone to  school together.  On the date in question, he and Symonds went to Cade's house at around 8:00 p.m. and bought marijuana.  They left after approximately ten minutes and went to petitioner's home.  Symonds left at around 2:00 a.m. and petitioner remained at home.  He denied that he returned to Cade's house or that he shot Cade or that he had any motive or reason to shoot at Mr. Cade.  When he saw Cade again in May of 1999, the two men shook hands and petitioner asked why Cade had

accused him of the shooting. Cade responded that other people had told him that petitioner was involved but that Cade would now clear his name. Kaprice Brown was with petitioner at the time.

Brandon Symonds corroborated petitioner's version of the night's events and his alibi. Keyana Knight, the woman who lived with petitioner, also corroborated the alibi with her testimony that petitioner did not leave their home again after he arrived with Symonds. Kaprice Brown corroborated petitioner's testimony that the May encounter with Cade was friendly.

C.    *Procedural Default*

Respondent first contends that petitioner's claims are barred by petitioner's procedural default in the state courts  because petitioner failed to raise these claims on direct appeal. As to the claims or parts thereof discussed below, the Court should agree.

1. *Background*

On direct appeal, petitioner raised three claims, two of which pertain to this petition. In the first issue, petitioner claimed that he was denied a fair trial and impartial jury because the prosecutor argued to the jury in rebuttal closing statement that petitioner's prior conviction for home invasion showed that he had a motive to commit the charged offenses. "The defendant is a man who has stolen before, broken into a home before to steal for things that he wants. The defendant has a reason to be on Larry Cade's porch by his own testimony." (Trial Transcript, Vol. IV, p. 256).   The Michigan Court of Appeals held that because petitioner had not objected to this comment the issue was not properly preserved and reviewed the claim under a plain error standard.   The Court found that there was plain error under Mich. R. Evid. 404(b) and Mich. R. Evid. 609.   The only proper use of the prior conviction was to assess credibility and the prosecutor's argument implied that because petitioner "had thieved in the past he was likely to thieve in the instant case." State Appeal, p. 2, 2002

7

WL 206505*1.   The Court further found that the error did not require reversal for two reasons: 1) the prosecutor's argument was a response to defense counsel's argument that there was no reason for petitioner to shoot the victim and 2) petitioner failed to establish the requisite prejudice.   As to the latter, the Court explained:

> The evidence in this case clearly established defendant as the shooter regardless of the impermissible inference argued by the prosecutor. Defendant's theory was alibi and thus, misidentification of him as the person who did the shooting. However, the identification of defendant as the shooter was by the victim himself who identified defendant as the shooter both immediately after the shooting and at trial. The victim knew defendant well enough to sell him marijuana and to hug him and shake his hand when he encountered him on the street. Therefore, we cannot say that this error resulted in the conviction of an actually innocent defendant or that it seriously affected the fairness, integrity or public reputation of [the] judicial proceeding.

State Appeal, p. 2, 2002 WL 206505*2.

In his second issue on direct appeal, petitioner challenged both the prosecution's questioning of defense witness Kaprice Brown about a prior unrelated incident and the prosecution's misstatement of Brown's response in closing argument.   On direct examination, Brown described the apparently friendly May, 1999 encounter between petitioner and Cade and denied that either he or petitioner were armed at the time.   Cade had similarly described the meeting and explained that he feared that Brown and petitioner were armed even though he did not see a weapon.   On cross-examination of Brown,  the prosecutor, over objection, elicited that Brown had been armed with a gun on September 18, 1999, a date unrelated to the charged crimes or parties.   Without evidentiary support but without objection the prosecutor argued in rebuttal closing statement that Brown had a conviction for carrying a gun and therefore the victim had good reason to be afraid that he was armed. The Michigan Court of Appeals only addressed the cross-examination and again found that the prosecutor had violated Mich. R. Evid. 404(b) and Mich. R. Evid. 609.   The Court nonetheless

8

concluded that the error was harmless in light of the substantial evidence against petitioner.

In his motion for relief from judgment and supporting brief, petitioner argued that his trial counsel had been ineffective for not objecting to the prosecutor's improper arguments and that the cumulative effect of the prosecutorial misconduct and ineffective assistance of trial counsel was to deny him his constitutional rights to a fair trial and impartial jury. Although not listed as a separate claim, petitioner also argued at some length that his appellate attorney's failure to present these arguments on his direct appeal constituted ineffective assistance of appellate counsel.

The trial court ruled on the record that it was denying the motion because petitioner had failed to raise the issues on direct appeal and was therefore not entitled to relief under Mich. Ct. R. 6.502. Although both the prosecutor and the defense attorney argued the merits of petitioner's claim that appellate counsel was ineffective for not raising these issues, the trial court made no specific ruling on this.

2. *Analysis*

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Procedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an "adequate and independent" state ground foreclosing review of a federal constitutional claim. *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir.2003); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). A procedural default does not bar consideration of a federal claim on habeas

9

review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on the procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989). Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)). For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment ." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004).

As to the prosecutor's improper argument concerning petitioner's prior conviction, there is no question but that this claim is procedurally defaulted. There was no objection to the argument; the Michigan Court of Appeals specifically held that the issue was not preserved; plain error review does not constitute a waiver of state procedural default rules, *see Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); and Michigan's contemporaneous objection rule is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors, *see Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir.2003).

The issues first raised in petitioner's motion for relief from judgment (ineffective assistance of trial counsel and the cumulative effect of the errors found on direct appeal plus the errors of trial counsel), except for the claim of ineffective assistance of appellate counsel, are likewise clearly procedurally defaulted. Michigan Court Rule 6.508, governing motions for relief from judgment, provides that the movant "bears the burden of establishing entitlement to relief." MICH. CT. R. 6.508(D). The rule goes on to provide, in three separately numbered paragraphs, procedural situations in which relief will not be granted: (1) where an appeal relating to the conviction is pending; (2) where the claim has already been ruled upon in a prior appeal or postconviction motion;

and (3) where the claim could have been raised in a prior appeal or postconviction motion but was not. *See* MICH. CT. R. 6.508(D)(1)-(3). The trial court did not reach the merits of the issues and specifically relied on petitioner's failure to raise the claims in his direct appeal, Mich. Ct. R. 6.508(D)(3). The Michigan Court of Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his failure to meet the burden of establishing entitlement to relief under MCR 6.508(D). It is well established that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground for foreclosing review of federal claims. *See Munson v. Kapture*, 384 F.3d at 315*; Howard v. Bouchard,* 405 F.3d 459, 477 (6th Cir. 2005).

Petitioner's claim of ineffective of assistance of appellate counsel is presumably not procedurally barred as he could not have raised this issue on direct appeal and did raise it at the first opportunity. *See Munson v. Kapture*, 384 F3d at 315 n.2.

### 3. *Cause and Prejudice Exception*

A petitioner may avoid this procedural default only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir.2005).

A claim of ineffective assistance of counsel, even a defaulted claim, can serve as cause to

excuse  procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 450-451 (2000); *Howard v. Bouchard,* 405 F.3d. at 478.  The claim of ineffective assistance  must generally be presented to the state courts as an independent claim before it may be used to establish cause for  procedural default. *Murray v. Carrier*, 477 U.S. at 488-89; *Broom v. Mitchell*, 441 F.3d 392, 401 (6th Cir. 2006). Petitioner presented his claim of ineffective assistance of trial counsel in his motion for relief from judgment.  Although he did not specifically list ineffective assistance of appellate counsel as a separate issue in the motion, it was argued at length in the pleadings and argued on the record as the good cause for not having raised the other issues in the direct appeal in the attempt to avoid the procedural default of  Mich. Ct. R. 6.508(D)(3).  Therefore, the claim of ineffective assistance of appellate counsel was adequately presented to the state court.  *See Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005).

To constitute cause, petitioner's attorneys must have been constitutionally ineffective under the standards articulated in *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  Petitioner  must satisfy two components.  "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*. at 687. To demonstrate that counsel's performance was deficient, petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  To demonstrate prejudice,  he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Judicial review of counsel's performance must be highly

deferential, with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.   With respect to prejudice in the context of ineffective assistance of appellate counsel, a defendant must show a reasonable probability that, but for his counsel's defective performance, he would have prevailed on appeal. *Smith v. Robbins,* 528 U.S. 259, 285 (2000).

Petitioner has not met his burden of establishing prejudice under *Strickland*.  He has not shown that, but for trial counsel's failures to object to the prosecutor's improper arguments, there is a reasonable possibility that he would have been acquitted at trial.  Nor has he shown that, but for appellate counsel's failure on direct appeal to raise ineffective assistance of trial counsel or to argue the cumulative effect of the errors, there is a reasonable probability that his convictions would have been reversed.

The only issue at trial was whether Cade honestly and accurately identified the person who shot him.  Cade's identification was the only evidence connecting petitioner to the crime and  petitioner presented two witnesses who corroborated his alibi testimony.   However, Cade knew petitioner, had seen him recently, used his correct nickname, and consistently identified him as the person who shot him.  There was no evidence the Cade had any motive to lie or falsely accuse petitioner.  Trial counsel failed to object to the prosecutor's improper argument about petitioner's prior conviction as proof of motive, but this argument would hardly have influenced the jury negatively in its assessment of the reliability of Cade's identification.  If the jury was concerned about  motive, there was testimony that petitioner asked Cade about money as he was banging on the door.  Even with that testimony, it would seem unlikely that the jury would have found the theft motive very compelling, with or without the prosecutor's argument.  Shooting from the outside into a dwelling where the occupants are known to be home seems an unlikely prelude to a robbery or home invasion.

13

Likewise, although trial counsel objected to the prosecutor's cross-examining Brown about having a gun on a prior occasion, he did not object to the prosecutor's presumably improper argument that Brown had a prior weapons conviction[2]. Neither the objected-to evidence nor the unobjected-to misstatement of the evidence had much bearing on the accuracy or honesty of Cade's identification of petitioner. Brown was not a witness to the charged offenses. While the defense argued that Cade's friendly demeanor towards petitioner during the May encounter was inconsistent with Cade honestly believing that petitioner had shot him, Cade testified that when he saw petitioner and Brown on that later date he acted friendly because he feared that they were armed. Cade also made it clear that he did not actually see any weapons at this encounter. While the prosecutor argued that Brown's prior weapons possession or conviction meant that Cade had good reason to be afraid at the May encounter, the jury was unlikely to be swayed either by the prosecutor's argument (since there was no evidence that Cade was aware of the prior possession), or by the weak defense argument that Cade's demeanor at this later encounter undermined his very definite and consistent statements that it was petitioner who shot him.

A weighing of the cumulative effect of these instances of prosecutorial misconduct compels the same conclusion, that the errors were harmless in light of the evidence. Nor can it be said that considered either singly or cumulatively the above instances of improper prosecutorial conduct prejudiced the jury against petitioner generally. The prosecutor's argument about the prior home invasion was not particularly inflammatory and Brown's prior conviction for a weapons violation

---

[2] *See People v. Stanaway*, 446 Mich. 643, 686, 521 N.W.2d 557 (1994) ("A prosecutor may not argue the effect of testimony that was not entered into evidence at trial," citing *People v. McCain*, 84 Mich.App. 210, 215, 269 N.W.2d 528 (1978)). As indicated above, the Michigan Court of Appeals agreed it had been improper for the prosecutor to even question Brown about the prior incident where he was armed.

would have little carryover effect on petitioner.  It is significant that the jury acquitted petitioner of the assault with intent to murder charge, an action which indicates that it carefully weighed the proofs and gave petitioner the benefit of the doubt.

Had the trial attorney fully preserved each claim of prosecutorial misconduct and/or had the appellate attorney on direct appeal argued the cumulative effect of prosecutorial misconduct and ineffective assistance of trial counsel, there is not a reasonable probability that there would have been a different outcome.  Nor would petitioner have succeeded in obtaining habeas relief if his claims of prosecutorial misconduct had been perfectly preserved.  To be cognizable on habeas review, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Even if the prosecution's conduct was improper or even "universally condemned," id., the federal court can only reverse if the statements were so flagrant as to render the entire trial fundamentally unfair. *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006).  In light of the above discussion of the evidence this standard cannot be met.

Having failed to sustain his burden under the prejudice prong of *Strickland*, no further inquiry is needed.  *Strickland*, 466 U.S. at 694 (directing that courts need not address both components of the inquiry "if the defendant makes an insufficient showing on one."  *See also, Howard v. Bouchard,* 405 F.3d at 485.

The Court should conclude that petitioner's claims of ineffective assistance of trial and appellate counsel lack merit and that petitioner cannot rely upon either as cause to excuse the procedural default of the indicated habeas claims.

　　　*4. Fundamental Miscarriage of Justice Exception*

15

In the absence of cause and prejudice, a petitioner may demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice.  A fundamental miscarriage of justice results from the conviction of one who is "actually innocent." *Murray*, 477 U.S. at 496.  A claim of actual innocence can be raised to avoid a procedural bar to the consideration of the merits of constitutional claims. *Schlup v. Delo*, 513 U.S. 298, 326-327 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*,  477 U.S. at 496.  The actual innocence claim is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup*, 513 U.S. at 315 (citation omitted).   The threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*.at 317.   "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Id.* at 324. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327.   The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, (1998).

Petitioner does not assert actual innocence and he does not offer any new evidence which would support such a claim.

### 5. *Conclusion*

The Court should find that petitioner's claim of ineffective assistance of trial counsel and his

claim of prosecutorial misconduct based on the improper argument of petitioner's prior conviction are barred by his procedural defaults in the state courts. The Court should also conclude that petitioner has not established either of the two exceptions which would allow it to reach the merits of his procedurally barred habeas claims. Accordingly, the Court should deny petitioner's application for habeas relief as to these claims.

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different

17

from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

18

them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Analysis of Remaining Claims*

Petitioner has not procedurally defaulted his claim that his rights to a fair trial and an impartial jury were violated by the prosecutor's eliciting from Brown that he had possessed a weapon on a previous unrelated occasion and by his misstating this evidence in closing statement. Presumably, he has also not procedurally defaulted his claim of ineffective assistance of appellate counsel.

The analysis of the merits of petitioner's defaulted claims mirrors and merges with the cause and prejudice inquiry above. *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999).

The Michigan Court of Appeals held that the cross-examination of Brown was harmless error. Although the Court did not specifically address the prosecutor's misstatement of the evidence, the result was not an unreasonable application of clearly established federal law. To be cognizable on habeas review, the prosecutorial misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. at 643. As discussed above, in light of the evidence at trial, particularly the strength of Cade's identification and the minor role that Brown's testimony played in the proofs, the trial was not unfair and petitioner was not denied due process.

As to the claim of ineffective assistance of appellate counsel, petitioner failed to meet his

burden of establishing prejudice under *Strickland,* as he failed to show that, but for appellate counsel's failure on direct appeal to raise ineffective assistance of trial counsel or to argue the cumulative effect of the errors, there is a reasonable probability that his convictions would have been reversed. *Smith v. Robbins,* 528 U.S. at 285.

F.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.      <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by

20

motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                    s/Paul J. Komives                              
                                    PAUL J. KOMIVES
                                    UNITED STATES MAGISTRATE JUDGE
Dated: June 20, 2006

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record by electronic
means or U.S. Mail on June 20, 2006.

                            s/Eddrey Butts      
                            Case Manager

21